# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 12, 2006

## STATE OF TENNESSEE v. BRADLEY FERRELL

**Appeal from the Circuit Court for Van Buren County**
**No. 1688-M    Larry B. Stanley, Jr., Judge**

**No. M2005-02552-CCA-R3-CD - Filed August 24, 2007**

D. KELLY THOMAS, JR., J., dissenting.

The majority in this case concludes that defendant is not entitled to relief based on the trial court's rulings regarding the defendant's proposed expert, Dr. Stephen Adams. As the majority states, the trial court ruled that Dr. Adams was qualified to give expert testimony regarding the defendant's brain injuries; however, in ruling that Dr. Adams was not qualified as a psychiatric expert, the trial court stated that "[t]he court does not prefer to hear testimony regarding capacity on a non-specific intent crime." In my view, this ruling prevented the Dr. Adams from presenting any testimony that the defendant lacked the capacity to form the requisite mental state for the offense with which he was charged. As a result, the defendant was prevented from presenting the key element of his defense, and the ruling clearly prejudiced the defendant. Therefore, I must respectfully dissent.

I

The trial record shows that the testimony presented to the jury proved beyond question that the defendant, while being held in the Van Buren County Jail on a misdemeanor assault sentence, left the confines of the jail in the company of a cellmate, James E. McCormick, without authority to do so. The only element of the offense that was open to question was that requiring proof that the defendant acted intentionally, knowingly, or recklessly. It is against that backdrop that the issue of disallowing expert medical testimony must be analyzed.

Our appellate courts have "concluded that a defendant's capacity to form the requisite mental state to commit an offense is an issue in criminal prosecutions because the general criminal law in Tennessee provides that '[n]o person may be convicted of an offense unless . . . [t]he culpable mental state required is proven beyond a reasonable doubt.'" State v. Hall, 958 S.W.2d 679, 689 (Tenn. 1997) (internal citation omitted). Furthermore, "the negation of an element of a criminal offense is recognized as a defense in Tennessee." Id. (citation omitted). In Hall, our supreme court held that psychiatric evidence that the defendant lacked the capacity to form the requisite mental state for an

offense

> must satisfy the general relevancy standards as well as the evidentiary rules which specifically govern expert testimony. Assuming that those standards are satisfied, psychiatric evidence that the defendant lacks the capacity, because of mental disease or defect, to form the requisite mental state to commit the offense charged is admissible under Tennessee law."

Id. The supreme court then cited to an opinion by this court that forms a substantial basis for my conclusion here:

> To find otherwise would deprive a criminal defendant of the right to defend against one of the essential elements of every criminal case. In effect, then, such a finding would deprive the defendant of the means to challenge an aspect of the prosecution's case and remove the burden of proof on that element in contravention of constitutional and statutory law. While the law presumes sanity it does not presume mens rea. Due process requires that the government prove every element of an offense beyond a reasonable doubt.

State v. Phipps, 883 S.W.2d 138, 149 (Tenn. Crim. App. 1994).

As the state argued at trial, the supreme court's holding in Hall refers to psychiatric evidence. However, the Hall court also recognized that "expert testimony relevant to negating intent is admissible in Tennessee even though diminished capacity is not a defense." Hall, 958 S.W.2d at 691. Therefore, I find no good reason why the rule that addresses psychiatric evidence regarding a defendant's lack of capacity to form a requisite mental state cannot be extended to medical experts. If the testimony satisfies both the general relevancy requirements and those provisions of the Tennessee Rules of Evidence addressing expert testimony, expert testimony establishing that a defendant's lack of capacity to form the required mental state results from an organic condition such as a brain injury should be admissible in criminal cases.

II

In this case, the relevancy and expert testimony standards required by Hall were clearly met. Dr. Adams was accepted as a medical expert by the trial court in that, at the time of his testimony, he had practiced internal medicine for eight years and had served as an associate professor in the Department of Family Medicine at the University of Tennessee Chattanooga, where he had taught for seven years. Dr. Adams testified that he had first treated the defendant when he entered the Erlanger Hospital emergency room in December 1997 in "status epileptic," that is, in a constant state of uncontrollable seizure. Dr. Adams and residents under his direction had treated the defendant continuously in the seven and a half years between the defendant's admission to the hospital and the date the trial began. Dr. Adams testified that the defendant does not suffer from a psychiatric condition but rather from an organic brain syndrome known as toxic encephalopathy. The physician

gave extensive testimony regarding the specific nature of the defendant's brain injuries and the results of these injuries: "deficits in cognition, deficits in short-term memory, deficits in long-term memory, deficits in awareness of his surroundings. Those deficits are fixed. They do not change with time . . . and they remain the same now as what I saw when I discharged him from the hospital [in] January of 1998." Dr. Adams further testified that he believed that the defendant was not "competent to intentionally commit a crime that requires planning ahead of time simply because he has deficits in memory." When asked if the defendant could follow someone out the door and not realize that he would be intentionally or knowingly breaking out of jail, the doctor replied that defendant "would not . . . know the full consequences of that action. I don't think there is any way he could." Given this evidence, Dr. Adams was qualified to give testimony regarding the defendant's inability to form the requisite mental state and should have been afforded that opportunity.

## CONCLUSION

In my view, the trial court's ruling that Dr. Adams could not testify regarding the defendant's capacity (or lack thereof) to form the requisite mental state for the charged offense denied the defendant the ability to present a defense. The trial court should have permitted the defendant to present medical evidence regarding an organic brain injury and the relation of that brain injury to the defendant's capacity to form the requisite mental state. The jury could have then decided if the state proved beyond a reasonable doubt that the defendant acted intentionally, knowingly, or recklessly. I would reverse the jury verdict and remand this case for a new trial.

_____
_____D. KELLY THOMAS, JR., JUDGE